UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANNA L. YATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 4:14-CV-00097-SPM |
| | ) |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, denying the application of Plaintiff Dianna L. Yates ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 7). Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

I. **FACTUAL BACKGROUND**

Plaintiff was born on May 20, 1948 and has an associate's degree in Applied Science. (Tr. 34-35). She worked as a full-time benefits specialist from 1997 to 2008 and as an instructor at Metro Business College from June 2009 to July 2010. (Tr. 37-38, 40-42, 153-56). She testified that she did not continue the instructor job because she did not believe she could physically or

mentally perform it. She later worked in several additional part-time jobs, most recently in March 2012 as a medical coder and biller. (Tr. 35-36).

Plaintiff testified at the hearing before the ALJ that she has back pain, leg pain, and pain in her right hand that cause her various physical limitations.[1] She also testified that she had two strokes in 2007, and since then she has had memory and concentration problems, difficulty remembering things she reads, and less patience than she used to have. (Tr. 49, 52, 54, 57). She testified that it seemed like the mental problems had gotten worse in 2011 and 2012. (Tr. 56).

## II. PROCEDURAL BACKGROUND

On April 27, 2011, Plaintiff applied for DIB, alleging that she was unable to work due to diabetes, laminectomy, lumbar spine scar tissue, degenerative disc disease, hypertension, right leg pain/trouble standing, recurring left elbow epicondylitis, and two strokes in November 2007. (Tr. 129-135, 190-91). That application was initially denied. (Tr. 67-73). On June 10, 2011, Plaintiff filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 76-77). On September 26, 2012, a hearing was held before the ALJ. (Tr. 30-59). On October 4, 2012, Plaintiff amended her onset date to July 24, 2010. (Tr. 175). On November 30, 2012, the ALJ issued an unfavorable decision. (Tr. 10-26). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeal's Council on January 11, 2013 (Tr. 6), but the Council declined to review the case on November 21, 2013. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

---

[1] Because Plaintiff does not challenge the ALJ's findings regarding her physical impairments, the Court does not address those impairments in detail.

## III. STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a plaintiff must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of

the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. § 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## IV. THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2010, the amended alleged onset date; Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, status post laminectomies, left elbow lateral epicondylitis, diabetes mellitus, hypertension, and carotid artery disease with the residual effects of a CVA (stroke); and Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 15-16). The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that she must have the option to sit and/or stand while working. (Tr. 17). The ALJ found that Plaintiff has past relevant work as a benefits analyst and as a vocational training instructor and that Plaintiff is capable of performing her past relevant work as a benefits analyst. (Tr. 21). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 24, 2010, through November 30, 2012, the date of the decision. (Tr. 22).

## V. DISCUSSION

### A. Standard For Judicial Review

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence 'is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore*, 572 F.3d at 522). In determining whether substantial evidence supports the

Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Plaintiff challenges the ALJ's decision on two grounds: (1) that the ALJ erred by failing to perform the "psychiatric review technique" ("PRT") to evaluate Plaintiff's alleged mental impairments; and (2) that the ALJ failed to satisfy his duty to develop the record regarding Plaintiff's mental impairments. I will address each argument in turn.

### B. The ALJ's Failure to Perform the PRT Does Not Require Reversal

When "mental impairments are present," the ALJ is required to evaluate the severity of those impairments using a special technique called the PRT. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520(a)).[2] The ALJ's written decision must reflect application of the technique and must include specific findings as to the degree of functional limitations the claimant has. *Id.*; 20 C.F.R. § 404.1520a(e)(4).

---

[2] Under the PRT, the ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." *Cuthrell*, 702 F.3d at 1118 (citing 20 C.F.R. § 404.1520a(b)(1)). The ALJ must then assess the degree to which the impairment causes limitations in each of several functional areas: (1) activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(b), (c)(3).

Plaintiff argues that the ALJ erred by failing to conduct the PRT here. She emphasizes that she had a cerebral vascular accident (stroke) in 2007; that the ALJ found "carotid artery disease with the residual effects of CVA" to be a severe impairment; that she testified that her stroke caused her to have problems with memory and concentration that had worsened in the two years before the hearing; and that her physician assistant submitted an opinion that she had some moderate limitations in the ability to maintain attention and concentration and the ability to understand, remember, and carry out detailed instructions. The Court will assume, without deciding, that this evidence is sufficient to show that "mental impairments are present" and that the ALJ therefore erred by not performing the PRT. However, not all such errors require reversal. Courts have found that where there is no credible evidence of a severe mental impairment, the failure to perform the PRT is harmless error and does not require reversal. *See Cuthrell*, 702 F.3d at 1118 ("This court has found harmless error [from the failure to complete the PRT] where there is no credible evidence of a severe impairment"); *Nielson v. Barnhart,* 88 F. App'x 145, 147 (8th Cir. 2004) (failure to complete PRT was not reversible error where the plaintiff did not mention depression as a basis for disability until the hearing, the claimant did not seek treatment for depression, the treating doctor's notes did not contain notations of depression, and the consulting psychiatrist's findings would not support a finding of a severe mental impairment); *Davis v. Astrue*, No. 4:11-CV-04119, 2013 WL 103561, at *3-*4 (W.D. Ark. Jan. 8, 2013) (failure to complete PRT was not reversible error because the plaintiff's medical records did not support a finding of a medically determinable mental impairment and did not contain any evidence establishing Plaintiff underwent mental health treatment for her alleged depression).

Here, as in the above cases, the ALJ's error does not require reversal because the record contains no credible evidence that Plaintiff has any severe mental impairment—*i.e.,* a medically determinable mental impairment that significantly limits her ability to perform work activities. *See* 20 C.F.R. §§ 404.1505(a); 404.1520(a)(4)(ii), (c). Plaintiff's medical records indicate that she had a "small" stroke in 2007. (Tr. 261, 263, 270, 274). Plaintiff testified that since then, she has had problems with her memory and concentration that worsened in the year or two before the hearing. (Tr. 49, 53, 56). However, as the ALJ noted, Plaintiff's medical treatment records do not support a finding that Plaintiff's stroke was associated with any mental limitations, nor do they support a finding that Plaintiff had any other mental impairments. (Tr.18-19). Plaintiff visited several treatment providers frequently in 2008 through 2012 for follow-up concerning her stroke and for a variety of other physical problems, including diabetes, hyperlipidemia, elbow pain, and back pain. There is *no* indication in her treatment records that she ever complained at any of these visits about memory problems, concentration problems, or any other mental symptoms. (Tr. 259-96, 303-18, 324-72, 388-89, 391-95, 397-426). In addition, Plaintiff's treatment providers never diagnosed Plaintiff with any mental impairment, never noted that they observed any mental symptoms, and never prescribed her any medications related to mental symptoms. Plaintiff's treatment providers did discuss Plaintiff's history of stroke, but they consistently noted normal neurological, psychiatric, and behavioral findings. For example, even after her July 2010 disability onset date, Plaintiff's treatment providers noted that she was "negative" for stroke symptoms (Tr. 360); had a normal mood, affect, and behavior and was alert and oriented (Tr. 327, 353, 369, 425); and was negative for neurological symptoms such as dizziness, tingling, and focal weakness (Tr. 353).

Other than Plaintiff's own testimony, the only evidence that Plaintiff had any mental symptoms is the July 2011 Medical Source Statement-Mental completed by Angela Gower, a physician assistant who treated Plaintiff. In addition to identifying numerous physical limitations, Ms. Gower opined that Plaintiff had "moderate" limitations in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods. (Tr. 385-86). However, Ms. Gower's opinion does not constitute credible evidence of a severe mental impairment, and the ALJ properly discounted it. (Tr. 20-21). First, as the ALJ recognized, Ms. Gower is a physician assistant and therefore is not an "acceptable medical source" who may establish the existence of a medically determinable impairment. *See* SSR 06-03p, 2006 WL 2329939, at *2. Second, as the ALJ recognized, Ms. Gower's opinion regarding Plaintiff's mental limitations is not supported by her own treatment notes or by the rest of the record. (Tr. 21). Like Plaintiff's other medical providers, Ms. Gower never diagnosed Plaintiff with any mental impairment, never noted in her treatment notes any complaints of mental symptoms, never prescribed Plaintiff any medication for any mental condition, and never referred Plaintiff to a mental health professional. (Tr. 325-27, 333, 348-49, 352-53, 358-65, 366-69, 397-426). Third, as the ALJ noted, Ms. Gower was not a mental health specialist. (Tr. 21). Finally, the Court notes that Ms. Gower's opinion was given in check-box form and contained no explanation of what conditions caused any of the claimed memory or concentration problems. (Tr. 385-86). For all of these reasons, her opinion was properly discounted by the ALJ and does not provide credible evidence of severe mental impairment. (Tr. 21). *See* SSR 06-03p, 2006 WL 2329939, at *4 (factors to be considered in evaluating opinion of an "other" medical source such as a physician assistant include the length and frequency of the relationship, how consistent the opinion is with other

evidence, the degree to which the source presents relevant evidence to support an opinion, how well the source explains the opinion, whether the source has a specialty or area of expertise related to the impairment(s), and other factors); *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) ("[W]e have recognized that a conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration.") (quotation marks omitted).

The above facts distinguish this case from *Cuthrell*, on which Plaintiff primarily relies. In *Cuthrell*, the court found that the ALJ had committed reversible error by not performing the PRT where the ALJ found that one of the plaintiff's severe impairments was a "closed head injury." 702 F.3d at 1117-18. However, in *Cuthrell*, unlike this case, the record showed that an acceptable medical source had found that the impairment at issue was associated with significant mental symptoms, and it appeared that the ALJ credited that doctor's assessment. Specifically, in finding that the closed head injury was a severe impairment, the ALJ in *Cuthrell* stated, "Frank S. Gersh, Ph.D., concluded after his examination of the claimant . . . that he had dementia due to a closed head injury with impaired memory, concentration and motor function and a mood disorder." *Id.* Here, in contrast, the ALJ did not find that Plaintiff's stroke was associated any mental limitations, nor did the medical record indicate that Plaintiff had any mental impairments at all. Thus, *Cuthrell* is not controlling here.

In sum, because the record contains no credible evidence that Plaintiff had any medically determinable mental impairment that significantly limited her ability to perform work activities, the ALJ's failure to perform the PRT was at most harmless error and does not require reversal. *See Nielson,* 88 F. App'x at 147; *Davis*, 2013 WL 103561, at *3-4.

## C. The ALJ Did Not Err by Failing to Develop the Record

Plaintiff next argues that the ALJ erred by failing to develop the record regarding Plaintiff's alleged mental impairments. She contends that the ALJ should have ordered a psychological consultative examination. The Court disagrees.

"While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2001) (citing *Barrett v. Shalala,* 38 F.3d 1019, 1023 (8th Cir. 1994)). "The ALJ is required to order medical examinations and tests *only if* the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id.* (citing *Conley v. Bowen,* 781 F.2d 143, 146 (8th Cir. 1986)) (emphasis added). Further, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Haley v. Massanari,* 258 F.3d 742, 749-50 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). Additionally, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v. Chater,* 54 F.3d 484, 488 (8th Cir. 1995) (quoting *Onstad v. Shalala,* 999 F.2d 1232, 1234 (8th Cir. 1993)).

Here, the evidence in the record provided a sufficient basis for the ALJ's decision. Plaintiff had a stroke in November 2007, and a November 28, 2007 scan of her brain was negative. (Tr. 440). As discussed above, between 2008 and 2012, Plaintiff received regular and frequent treatment from several medical providers who discussed her stroke. As discussed above, they found her neurological, psychiatric, and behavioral conditions to be generally normal, even after her alleged disability onset date. Significantly, Plaintiff never reported to any of these

11

treatment providers any problems with memory or concentration, nor did any of them mention any mental symptoms or diagnose any mental impairments. The complete absence of complaints of mental symptoms at Plaintiff's frequent treatment visits, combined with the normal neurological and psychiatric findings in the record, provided a sufficient record for the ALJ to assess Plaintiff's allegations regarding her mental impairments.

In addition to the medical evidence, the ALJ considered Plaintiff's daily activities and found that they undermined her allegations of memory and concentration problems. For example, as the ALJ noted, Plaintiff maintained extensive daily activities that required memory and concentration, including driving, handling her finances, following cooking instructions, and reading. (Tr. 19, 202-06, 210-11). *See Myers v. Colvin*, 721 F.3d 521, 527-28 (8th Cir. 2013) (extensive daily activities undermined credibility of complaints of depression, anxiety, and inability to concentrate).

The ALJ also found that Plaintiff's work history did not support her allegations of memory and concentration problems. He properly considered the fact that Plaintiff continued working at skilled jobs long after the 2007 stroke that allegedly caused her mental impairments, and that the evidence did not indicate that her condition deteriorated around the time of her July 2010 alleged onset date. (Tr. 19, 44, 177, 191-92, 217, 222, 250). *See Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005) ("The fact that Goff worked with the impairments for over three years after her strokes, coupled with the absence of evidence of significant deterioration in her condition, demonstrate the impairments are not disabling in the present."); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) ("despite suffering from what she calls 'extreme fatigue,' [the plaintiff] continued working for over four years"). He also properly considered evidence suggesting that she had stopped working solely due to her impairments. (Tr. 20). For example,

Plaintiff testified that she stopped working as a benefits analyst in 2008 because her job was outsourced to China, and that she stopped working as a medical biller and coder in 2012 because she was "not aggressive." (Tr. 19, 35-36, 48). *See Goff*, 421 F.3d at 793 ("Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition."). In addition, although Plaintiff testified that she did not continue the full-time instructor job because she was not physically or mentally able to perform it, that assertion is undermined by her testimony that she had been offered the opportunity to return to the job full-time, suggesting that she had been performing it well. (Tr. 45-46, 55-56). The ALJ also properly considered the fact that Plaintiff had performed several part-time jobs even *after* her alleged onset date. (Tr. 15, 19, 177, 217). *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [the plaintiff's] daily activities, including part-time work . . . were inconsistent with her claim of disabling pain."). *See also* 20 C.F.R. § 404.1571 ("The work . . . that [a claimant has] done during any period in which [she] believe[s] [she is] disabled may show that [she is] able to work at the substantial gainful activity level.").

In sum, the evidence in the record provided a sufficient basis for the ALJ to assess Plaintiff's alleged mental impairments, and his assessment was supported by substantial evidence. He did not err by failing to develop the record further. *See Haley*, 258 F.3d at 749-50 (holding that the ALJ did not err in failing to order a consultative examination because the ALJ properly considered substantial evidence to support his decision, including numerous medical records, disability reports, and claimant's hearing testimony).

## VI. CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of February, 2015.